## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

### CIVIL MINUTES - GENERAL

Case No. 6:11-CV-6047-DOC                                      Date: November 14, 2012

Title: BENN, ET AL. v. WALKER & UNITED STATES

---

PRESENT:

### THE HONORABLE DAVID O. CARTER, JUDGE

| Christy Weller | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT                                                   NONE PRESENT

---

PROCEEDING (IN CHAMBERS): ORDER GRANTING MOTIONS TO DISMISS

       Before the Court are Defendant United States' motions to dismiss the claims of plaintiffs Trinity Guyante, Jesse Reynolds, Carline Ross, Lucille Yarbrough, and Debra Hargett (Dkts. 25, 32), opposed by all plaintiffs (Dkt. 36). The Court finds this matter appropriate for decision without oral argument. Fed.R.Civ. P. 78(b). After consideration, the Court GRANTS Defendant's motions as to plaintiffs Guyante, Reynolds, Ross, Yarbrough, and Hargett, and DISMISSES those plaintiffs' claims against the United States with prejudice.

       The United States also brought motions to dismiss the claims of Leonida Hileman (Dkt. 25) and Suana Fenton Wright (Dkt. 39), but has since informed the Court that it reached settlements with those two plaintiffs. Accordingly, pursuant to the terms of those settlements, the Court DISMISSES the claims of plaintiffs Leonida Hileman and Suana Fenton Wright against the United States with prejudice, with each party to bear its own costs.

### I. Background

       At all times material to this case, Defendant Mark Walker was a U.S. Parole and Probation Officer, employed by Defendant United States of America. *See* First Am. Compl. (FAC) (Dkt. 11) ¶ 3. Each Plaintiff, except Debra Hargett, alleges that she or he was under the supervision of

---

Walker during at least some portion of their respective periods of probation or supervised release. *See id.* ¶¶ 10-100. Those same plaintiffs allege that, during their periods of probation or supervised release, Walker took unlawful or otherwise wrongful actions against them. *See id.*

Plaintiffs Guyante, Ross, and Yarbrough allege that Walker sexually harassed or sexually assaulted them. *See id.* Plaintiff Jesse Reynolds alleges that Walker took actions which violated his rights "and which were an excessive intrusion onto his person and marriage . . . ." *See id.* ¶ 48. Plaintiff Debra Hargett, who was never under the supervision of Walker, alleges that he abused his role as a U.S. Probation Officer to interfere with her personal and economic activities. *See id.* ¶ 97.

### a. Timing of Administrative Claims

Plaintiff Trinity Guyante alleges that Walker harassed her throughout her supervised release, which spanned the period from April 27, 1999, through approximately January of 2008. *See id.* ¶¶ 20-33. She does not claim that Defendant Walker ever forced or coerced her into sexual relations or sexual intercourse, but she alleges, among other things, that "Defendant Walker told Plaintiff Guyante that it was a stipulation of her release that she stay away from men," that he "told her that he would show her what she needed in a man by showing her how special she was," and that he "was sexually suggestive" and "hugged her frequently." *Id.* ¶ 25. She first filed her claim with the Administrative Office of the United States Courts on August 25, 2010, approximately 30 months after her last alleged contact with Defendant Walker. *See* Decl. of John L. Chastain (Dkt. 27).

Plaintiff Jesse Reynolds, the only male involved in this suit, alleges that Walker unlawfully violated his rights by interfering with Reynolds's "person and marriage" during his period of supervised release, spanning the years from 2003 to 2006, and also that Walker incorrectly and unlawfully convinced Reynolds that his period of supervision extended 14 months past its official end date. *See* FAC ¶¶ 44-54; Decl. of John L. Chastain (Dkt. 29). More specifically, Plaintiff Reynolds alleges that Walker "repeatedly came to the home of [Reynolds] and flirted with Plaintiff Reynolds's wife" while Reynolds was at work. FAC ¶ 46. During the fourteen months immediately following Reynolds's official period of supervised release, he further alleges that Walker told him that his supervision was five years rather than three, and that "Defendant Walker continued to come to Plaintiff Reynolds's home and interact inappropriately with his wife." *Id.* ¶ 46. Reynolds does not allege that Walker sexually assaulted or ever had any sexual relationship with Reynolds's wife. While Reynolds only offers the approximate dates of his official period of supervised release as "2003 through 2006," FAC ¶ 45, fourteen months past any date in 2006 would not extend beyond February of 2008. He filed his claim with the Administrative Office of the United States Courts on August 25, 2010. *See* Decl. of John L. Chastain (Dkt. 29).

Plaintiff Carline Ross alleges that Walker acted in a sexually suggestive and unwelcome manner with her and her teenage daughter during her period of supervised release, from 2001 through 2006. FAC ¶¶ 55-65. She does not claim that Walker ever forced her to engage in sexual intercourse

or sexual acts. Specifically, she alleges that he "said she was a very attractive lady," that he "discussed intimate details of her life," that he hugged her, that he rubbed her back, that he would become aroused and "sit in his chair, lean back, and say she should take care of him; that it was up to her how difficult probation would be." *Id.* ¶ 57. Plaintiff Ross also alleges that Walker proposed that their meetings be held in a motel room, and that he suggested her husband "must be gay" because, if Walker were married to her, "he would jump her bones." *Id.* ¶ 58. She filed her claim with the Administrative Office of the United States Courts on October 21, 2010, approximately four years after her last alleged contact with Walker. *See* Decl. of John L. Chastain (Dkt. 30).

Plaintiff Lucille Yarbrough alleges that Walker coerced her into engaging in sexual acts, including over 25 instances of intercourse, during her period of supervised release from 1999-2001. *See* FAC ¶¶ 77-86. She filed her claim with the Administrative Office of the United States Courts on September 8, 2010, approximately nine years after her last alleged contact with Walker. *See* Decl. of John L. Chastain (Dkt. 31).

Plaintiff Debra Hargett was not a supervisee of Defendant Walker's, and she does not allege sexual harassment or assault. She alleges that, after making her acquaintance in 2008, Defendant Walker abused his position as a United States Probation Officer to get her fired from her job at Goodwill Industries, to interfere with her romantic relationship, and to threaten her with further harm if she were to "talk about him to anyone." *See* FAC ¶¶ 87-100. Specifically, she describes their relationship as beginning consensually, with the possibility of something romantic and a kiss. *Id.* ¶¶ 88-90. However, after she "determined that Defendant Walker was unlikely to leave his wife or get her a better job," Hargett broke things off. *Id.* ¶ 91. After she began seeing someone else, she alleges that Walker became jealous, used his position to get her fired, and repeatedly acted in a harassing manner. *Id.* ¶¶ 93-96. Her interactions with Walker ended in July 2009. *See* Decl. of John L. Chastain (Dkt. 34) at Appendix.

While Hargett claims that she mailed a completed Standard Form 95 complaint to the Administrative Office of the United States Courts on May 25, 2011, the office never received the form or any other document until an email copy of Hargett's letter was sent on April 2, 2012. *See* Decl. of John L. Chastain (Dkt. 34). Hargett's letter, allegedly mailed on May 25, 2011, is dated "May 25, 2010," although it also refers to events that occurred in early 2011. *See id.* at Appendix. Hargett alleges that she sent the original letter by certified mail, and presents a certified mail receipt from May 25, 2011, indicating that "return receipt" service was purchased for some item of mail that was sent to the Administrative Office. *See id.* at Appendix. She has submitted only the purchase receipt, however, and her counsel acknowledges that he has no record of receiving the *return* receipt that would have confirmed delivery of the mailing. Decl. of David Moule (Dkt. 36-3) at 3.

### b. Complaint in District Court

Plaintiffs brought an amended complaint naming the United States as a party defendant

on January 6, 2012. *See* FAC. Plaintiffs' claims for relief against the United States are brought pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2401(b), and 2671, *et seq.* (FTCA), alleging negligence and wrongful conduct on the part of the United States and also claiming liability under *respondeat superior*. *See id.* On September 17, 2012, Defendant United States moved to dismiss Plaintiffs' claims for lack of jurisdiction, Fed. Rule Civ. P. 12(b)(1), or, in the alternative, moved for summary judgment pursuant to Rule 56(a). *See* Def's Mots. (Dkts. 25, 32).

## II. Discussion

### a. Plaintiffs Guyante, Reynolds, Ross, and Yarbrough

Defendant argues that this Court should dismiss the actions of plaintiffs Guyante, Reynolds, Ross, and Yarbrough (Plaintiffs) because they failed to raise their claims with the proper administrative authority within two years of accrual, as required by the FTCA, and such a failure strips this Court of its jurisdiction to hear the case. Plaintiffs argue that their claims did not accrue until they learned of Walker's arrest in 2010, or, in the alternative, that their untimely claims do not create a jurisdictional bar and should allow for equitable tolling remedies.

Because the Court finds, first, that Plaintiffs' claims accrued at the date of each alleged unlawful incident involving Walker, and, second, that current Ninth Circuit precedent interprets the statute of limitations in § 2401(b) to be jurisdictional, the Court must dismiss Plaintiffs' claim against the United States for lack of subject matter jurisdiction.

#### i. Accrual

Under the FTCA, a claim accrues "when a plaintiff knows or has reason to know of the injury which is the basis of" her action. *Hensley v. United States*, 531 F.3d 1052, 1056 (9th Cir. 2008) (quoting *Gibson v. United States*, 781 F.2d 1334, 1344 (9th Cir.1986)). The FTCA represents a waiver of the sovereign immunity of the United States, and, as such, must be strictly construed. *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 94–95 (1990); *United States v. Kubrick*, 444 U.S. 111, 117–18 (1979); *Soriano v. United States*, 352 U.S. 270, 276 (1957).

In certain circumstances, most notably claims involving medical malpractice, accrual does not occur until the plaintiff "knows of both the existence of an injury *and its cause.*" *Hensley*, 531 F.3d at 1056 (citing *Kubrick*, 444 U.S. at 122-23) (emphasis added). While medical malpractice claims provide a clear example of why such an exception, known as the "discovery rule," may be necessary–it is often impossible for plaintiffs to trace their injuries back to improper medical care without first discovering that malpractice occurred–courts do not employ this discovery rule broadly to find that accrual did not occur at the time of an injury. *See id.* at 1057 ("We reiterate[] the rule that the claim accrued when the plaintiffs 'knew both the fact of injury and its immediate physical cause.'") (quoting *Dyniewicz v. United States*, 742 F.2d 484, 487 (9th Cir. 1984)). Such a delay would defeat the purpose of the limitations statute, which is "to require the reasonably diligent presentation of tort claims against

the Government." *Kubrick*, 444 U.S. at 123.

The Ninth Circuit has also stated unequivocally that "accrual does not await a plaintiff's awareness, whether actual or constructive, of the government's negligence." *Hensley*, 531 F.3d at 1056 (citing *Kubrick*, 444 U.S. at 122-23); *see also Dyniewicz*, 742 F.2d at 487 ("[I]gnorance of the involvement of government employees is irrelevant to accrual of a federal tort claim."). In *Dyniewicz*, for example, plaintiffs pursuing a wrongful death claim did not learn until twenty-seven months after a flood killed their parents that National Park Service rangers may have played a role in the incident. 742 F.2d at 485. The court nevertheless held that the claim had accrued at the time of the flood, and not upon the plaintiffs' learning of the potential negligence of United States employees, because plaintiffs knew of both the harm (the death of their parents) and its immediate physical cause (a flooded highway). *See id.; see also Davis v. United States*, 642 F.2d 328, 331-32 (9th Cir. 1981) (affirming the district court's holding that the plaintiff's claim against the United States accrued when he knew that he had been injured by a polio vaccination, and not later when he learned, during the course of his lawsuit against Wyeth Laboratories, about allegedly negligent pre-approval vaccine testing conducted by an agency of the federal government).

Here, Plaintiffs' claims accrued at the time of each incident of sexual impropriety or unlawful interference by Walker because Plaintiffs knew at that time both the harm (unwanted sexual contact or personal interference) and its immediate physical cause (Walker). Plaintiffs make the same argument that the court rejected in *Dyniewicz*, *Hensley*, and *Davis*, proposing that accrual is triggered by the emergence of new evidence of government negligence. *See Dyniewicz*, 742 F.2d. at 487; *Hensley*, 531 F.3d at 1056 (reiterating that "plaintiffs' ignorance of the involvement of United States employees is irrelevant to determining when their claim accrues") (internal quotations omitted); *Davis v. United States*, 642 F.2d at 331-32; *see also Gibson v. United States*, 781 F.2d 1334, 1344 (9th Cir. 1986) (refusing "to delay accrual of a federal tort claim until plaintiff knows or has reason to know of the culpability of federal agents.").[1] This argument must fail.

Plaintiffs rely on another case, *Simmons v. United States*, 805 F.2d 1363 (9th Cir. 1986), to argue that the Ninth Circuit has recognized that accrual may be delayed past the actual date of an

---

1 To the extent that Plaintiffs rely on two Oregon Supreme Court cases, *Berry v. Branner*, 245 Or. 307, 312 (1966), and *T. R. v. Boy Scouts of America*, 344 Or. 282, 291-92 (2008), to support their theory of accrual, the citations are inapposite. Under Section 2401(b), the date of accrual is determined solely by federal law, not Oregon law. *See Bartleson v. United States*, 96 F.3d 1270, 1276 and n. 4 (9th Cir. 1996) ("The date on which an FTCA claim accrues is determined by federal law... We have found no authority to indicate there are any situations in which federal law does not govern the accrual of an FTCA claim."); *Washington v. United States*, 769 F.2d 1436, 1438 (9th Cir. 1985) ("The date on which a claim accrues is determined by federal law."); *Poindexter v. United States*, 647 F.2d 34, 36 (9th Cir. 1981) ("It is long settled . . . that the statute of limitations in the FTCA . . . governs in FTCA actions, even when the state period of limitations is longer or shorter.").

incident of sexual abuse. *See* Pl's Opp'n (Dkt. 36) at 3-4. In that case, a federal counselor had sexual relations with a patient after encouraging her to "act on her professed feelings of attraction to him," and the court held that the "transference phenomenon" rendered her unable to recognize that her therapist's actions had harmed her until she received a transference diagnosis during a later course of treatment. *Simmons*, 805 F.2d at 1364-67. Thus, she did not know of the existence of her injury until that later date. *See id.*

Unlike the patient victimized by her therapist in *Simmons*, these Plaintiffs do not argue that transference played any role in their relationship with Walker, or that they did not understand that they were being harmed. They each knew at the time of their contact with Walker that his actions were harmful and unwanted. *See, e.g.*, Guayante Decl. (Dkt. 38) at 4 (Walker "subjected me to unwanted sexual contact and attention"); Ross Decl. (Dkt. 36-1) at 3 (same); FAC ¶ 81 ("Plaintiff Yarbrough was aggrieved by Defendant Walker's persistent sexual harassment and abuse."). They were never under the impression that they were willing and voluntary participants in a romantic relationship and thus unable at the time to suspect that they had in fact been victimized. *See Simmons*, 805 F.2d at 1364. There is no record of a later diagnosis alerting Plaintiffs to the fact that they had suffered harm. Instead, Plaintiffs assert that the date of accrual should be delayed to the moment that the Plaintiffs learned of Defendant United States' negligence, the exact argument that failed in *Dyniewicz*, *Hensley*, and *Davis*.

While the Court certainly appreciates why Plaintiffs felt empowered to make their claims public only *after* hearing reports that others had suffered similar abuse at the hands of Walker, Ninth Circuit precedent does not factor such considerations into the determination of when accrual has occurred for the purposes of the FTCA.

### ii. Section 2401(b)

Section 2401(b) of the FTCA requires both that a plaintiff present her claim against the United States to the appropriate federal agency within two years of its accrual and that she thereafter bring her claim in federal district court within six months of the agency's final denial of her claim. 28 U.S.C. § 2401(b). If the plaintiff fails to timely raise her claim, it is "forever barred." *Id.* The Ninth Circuit has held that this portion of Section 2401(b) is jurisdictional, and that a court is therefore precluded from hearing a case past the time limits outlined in the statute. *See Marley v. United States*, 567 F.3d 1030, 1035 (9th Cir. 2009) ("[T]he statute of limitations in § 2401(b) is jurisdictional and . . . the failure to file a claim within that time period deprives the federal courts of jurisdiction. Accordingly, the doctrines of equitable estoppel and equitable tolling do not apply.").

Plaintiffs point out[2] that there is a circuit split as to whether the time limits of Section

---

2 Plaintiffs' brief does not directly address the issue of equitable tolling, but rather incorporates by reference the opposition filed by plaintiff Shelley Lemke in her related case, challenging a similarly

2401(b) constitute a jurisdictional bar, and they argue that recent Supreme Court cases have freed district courts to apply the doctrines of equitable estoppel and equitable tolling. *See* Opp'n of Shelley Lemke, *Lemke v. Walker and United States*, Case No. 6:11-cv-06111-DOC, at 7-8 (citing *Dunlap v. United States*, 2012 WL 510532 at *2-5 (D. Ariz. Feb. 26, 2012) (denying the United States' Rule 12(b)(1) motion to dismiss and holding that Section 2401(b) is not jurisdictional)). Current Ninth Circuit precedent, however, precludes this Court from ruling as Plaintiffs urge.

While a strong argument can be made that the Supreme Court will eventually conclude that Section 2401(b) is not jurisdictional in nature and is subject to equitable tolling,[3] the Supreme Court has not yet specifically addressed the issue and the current and controlling position of the Ninth Circuit is clearly that the "statute of limitations in § 2401(b) is jurisdictional and that the failure to file a claim within that time period deprives the federal courts of jurisdiction." *Marley*, 567 F.3d at 1038 (9th Cir. 2009), *cert. denied*, ⎯ U.S. ⎯, 130 S. Ct. 796, (2009); *accord Adams v. United States*, 658 F.3d 928, 933 (9th Cir. 2011) ("The FTCA's statute of limitations is jurisdictional and not subject to equitable tolling or estoppel. . . . Thus, FTCA claimants must strictly adhere to the statute of limitations or lose the right to invoke federal jurisdiction."); *Banares v. Demore*, 417 Fed. Appx. 638, 2011 WL 703108 at *1 (9th Cir. Feb.18, 2011); *Keller v. United States*, 2012 WL 2929504 at *3 (D. Ariz. July 18, 2012) ("Because the Court concludes as a matter of law that Keller failed to timely present her administrative claims as required by § 2401(b), federal subject matter jurisdiction does not exist over this action."); *Santillo v. United States*, 2011 WL 2729243 at *3 (S.D. Cal. July 13, 2011) ("[S]ection 2401(b) is considered jurisdictional. . . .").[4]

Because their claims accrued, at the latest, at the time of their last alleged contact with Walker, Plaintiffs were obligated under the FTCA to "ascertain the existence and source of fault within

---

reasoned motion to dismiss. *See* Pl's Opp'n at 6 (incorporating the Opposition and Declaration of Shelley Lemke in Case No. 6:11-cv-06111-DOC).
3 *See Dunlap*, 2012 WL 510532 at *2-3 (arguing that the Supreme Court has addressed courts' "misapplication of the label 'jurisdiction' to what are actually merits-based dismissals for failure to state a claim" in *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 511 (2006), *Reed Elsevier, Inc. v. Muchnick*, 130 S.Ct. 1237, 1244 (2010), *Henderson ex rel. Henderson v. Shinseki*, 131 S.Ct. 1197, 1206 (2011), and *Gonzalez v. Thaler*, 132 S.Ct. 641, 648–52 (2012), and that those holdings would indicate that Section 2401(b) is not "jurisdictional" as the Ninth Circuit currently applies the word).
4 The same arguments raised by Plaintiffs concerning the availability of equitable tolling to the FTCA's statute of limitations are currently on appeal before the Ninth Circiut. *See June v. United States*, Ninth Circuit Case No. 11–17776 (involving claims that were dismissed with prejudice for lack of jurisdiction because the administrative claims required by the FTCA were not timely presented to the Federal Highway Administration).

the [two year] statutory period" after that date. *Davis v. United States*, 642 F.2d 328, 331 (9th Cir. 1981) (citing *Kubrick*, 444 U.S. at 124). They failed to do so, and Ninth Circuit precedent forecloses the possibility of applying equitable remedies to extend the time available to bring time-barred claims under the FTCA. *See Marley*, 567 F.3d at 1035.

### iii. Subject Matter Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(1), a complaint must be dismissed if the court lacks subject matter jurisdiction to adjudicate the claims. Once subject matter jurisdiction is challenged, the burden of proof is placed on the party asserting that jurisdiction exists. *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (holding that "the party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists"). Accordingly, a court will presume lack of subject matter jurisdiction until the plaintiff proves otherwise in response to the motion to dismiss. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Here, Plaintiffs have failed to meet their burden of establishing that jurisdiction exists. Their claims accrued at the time Defendant Walker abused his authority and acted inappropriately with each of them, but they did not file with the appropriate administrative agency until after the two year statute of limitations had run out. Because the statute of limitations defined in Section 2401(b) is jurisdictional, this Court now lacks subject matter jurisdiction to adjudicate Plaintiffs' claims.

Several plaintiffs have laid out a series of highly affecting and indisputably logical reasons explaining their failure to raise a claim earlier. The Court does not challenge those assertions, and does not doubt that their fear of retaliation and their ignorance of the extent of Walker's abuses reasonably led them to feel that they could not safely make claims against him while under his supervision. However, because Defendant United States raises a jurisdictional issue that has been clearly decided by the Ninth Circuit, the equitable remedies that this Court would otherwise employ are not available to it. *See, e.g., Hasbrouck v. Texaco, Inc.*, 663 F.2d 930, 933 (9th Cir. 1981) (holding that a district court erred in failing to apply law as set forth in the opinion of its home circuit, which had not been overruled at the time of decision and which was not clearly distinguishable).

This Court has before it several cases involving the claims of plaintiffs who allege similar abuse and exploitation at the hands of Defendant Walker. *See Wafford v. Walker & United States*, Case No. 11-6411; *Garcia v. Walker & United States*, Case No. 10-06220; *Stevenson v. Walker & United States*, Case No. 10-6341. Plaintiffs' allegations may remain relevant to an ongoing case, but their failure to report these crimes in a timely matter deprives the court of jurisdiction to adjudicate their claims against the United States.

### b. Plaintiff Debra Hargett

Defendant argues that this Court should dismiss the action of plaintiff Debra Hargett

because she failed to file her claim with the proper administrative authority, as required by the FTCA, and such a failure strips this Court of its jurisdiction to hear the case. Plaintiff Hargett argues that her filing was complete as soon as she mailed a letter containing her Standard Form 95 complaint to the Administrative Office of the United States Courts.

Defendant correctly asserts that an administrative claim is deemed presented to a federal agency when the agency receives the claim, not when the claim is mailed. *See, e.g., Vacek v. U.S. Postal Service*, 447 F.3d 1248, 1251 (9th Cir. 2006) (citing 28 C.F.R. § 14.2); *Bailey v. United States*, 642 F.2d 344 (9th Cir. 1981); *see also Wilson v. United States Dep't of Educ.*, 2012 WL 1443274 at * 4-5 (D. Or. April 24, 2012), *adopted* 2012 WL 3065270 (D. Or. July 27, 2012). The common law mailbox rule, relied on by plaintiff Hargett, which creates a "rebuttable presumption" of receipt upon proof of a proper mailing, does not apply to the exhaustion requirements of the FTCA. *See Vacek*, 447 F.3d at 1251-52.

Here, the Administrative Office of the United States Courts has no record or information that it received any claim or other document from Plaintiff Hargett or anyone acting on her behalf. *See* Decl. of John L. Chastain (Dkt. 34). Plaintiff submits a purchase receipt for one USPS certified mailing on May 25, 2011, but acknowledges that the return receipt never arrived. Decl. of David Moule (Dkt. 36-3) at 3. Thus, there is no evidence that the Administrative Office ever received the purported mailing.

Accordingly, Plaintiff Hargett has failed to exhaust her administrative remedies as required by the FTCA. Because the Court finds, as described in Part II(a) of this opinion, that current Ninth Circuit precedent interprets the statute of limitations in § 2401(b) to be jurisdictional, the Court must dismiss Debra Hargett's claim against the United States for lack of subject matter jurisdiction.

### III. Conclusion

For the foregoing reasons, Defendant's motions are GRANTED as to plaintiffs Trinity Guyante, Jesse Reynolds, Carline Ross, Lucille Yarbrough, and Debra Hargett, and those plaintiffs' claims against the United States are DISMISSED with prejudice.[5]

Regarding the claims of Leonida Hileman and Suana Fenton Wright, the Court also DISMISSES those plaintiffs' claims against the United States, with prejudice, pursuant to the terms of the settlements that they reached with the United States, with each party to bear its own costs.

The Clerk shall serve this Minute Order on all parties to the action.

---

5 Because the Court has determined that it lacks subject matter jurisdiction to adjudicate these plaintiffs' claims, it need not address Defendant's alternative motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(a).